## RUSH'S ESTATE.

Under a testamentary direction to invest in any loans of the United States, or of the State of Pennsylvania, or of the city of Philadelphia, or in any of the incorporated districts in the county of Philadelphia, *or in any public stocks or securities bearing an interest,* executors are not liable for a loss incurred on an investment in the loan of the Lehigh Coal and Navigation Company, a private corporation owning a canal and coal-mines, and engaged in the business of mining and shipping coal.

APPEAL from the Orphans' Court of Philadelphia.

*Jan.* 10 and 11, reargued *Jan.* 31. Lewis Rush, by his will proved in 1836, bequeathed to his executors $18,000, in trust to pay the interest thereof to his four sons in certain proportions. The several bequests were in the following words:

"I give and bequeath unto my said executors, the sum of $4000, as a fund to be invested in any loans of the United States, or State of Pennsylvania, or of the city of Philadelphia, or of any of the incorporated districts of the county of Philadelphia, or in any public stocks or securities bearing an interest, or to place out and

continue the same at interest on good mortgage security, as they my said executors, or the survivor of them, in their or his sole discretion may see fit and proper, and the same to call in, new place, sell, change, and transfer, and reinvest the same, when and as often as they or he may deem it advisable."

Between 1836 and 1840, the executors invested the sum of $18,000 in the loan of the Lehigh Coal and Navigation Company. This company was chartered by the State of Pennsylvania, for the purpose of constructing a canal, and mining and shipping coal. Until January, 1842, the interest on the loan was regularly paid. It then stopped paying interest, and the loan consequently fell in the market.

In 1845 the accounts of the executors were referred to an auditor for settlement, where the *cestuis que trust* objected to the investment, and to the executors being allowed credit for the amounts paid by them for the loan. The auditor, however, allowed the credit as claimed; but his report was set aside by the Court, and the executors charged with the amount received by them from the estate, considering the investment not to have been made in such a public stock, as was mentioned or designated in the will. From this decree the present appeal was taken.

*Henderson* and *Williams*, for appellants.—The intention of the testator is the guide, and that is to be ascertained by giving to his language the ordinary meaning among the mass of the community: Ward on Leg. 208; 5 W. & S. 256. He has divided the securities on which he desired the investments to be made into the two classes: private, which were to be mortgages only; public, including all the stocks or securities referred to by him, and which is the common meaning of the word. Government loans are not commonly called securities, and other property than what belongs to it, is called public: 2 Hilly. Abr. 158. His meaning on this point is clear. He has confined the executors to the loans, &c., which are here; and then, after enumerating all our government loans, he adds, any other public securities. This loan is certainly styled in common parlance a public security, as the work itself is called a public work, which in one sense it is, being intended to improve a public highway. On no other ground could the legislature authorize the taking of private property for its purposes: 4 W. C. C. 608; Bald. 223. The executors here acted in good faith, and should not be

held liable to legatees for a mere mistake in judgment.   Twaddel's Appeal, 5 Barr, 15, is conclusive on this point.

*T. Sergeant*, contrà.—If there had been no direction in the will, such an investment would not have been allowed: Lewin on Trusts, 116, 308, 314; 3 Atk. 44; 2 Dick. 499, n.; 7 Ves. 150; but here is an express direction, and a deviation from it is at the peril of the executors: 2 Story's Eq. § 1276.   The testator has enumerated certain classes of securities, all of which are public; and then adds, any other public securities, which means securities of the like kind with those enumerated.   The present loan is in no sense public, and to hold it so, will be to obliterate all distinction between public and private securities.   The essential distinction between them is, that for the former the public faith is pledged, for the latter individual responsibility.   Here there is less than that, for the property of a corporation is alone pledged; that, too private in every sense of the word.   It is owned by the stockholders; it carries on a trade for their exclusive benefit, and they alone share in the profits: Bald. 223; 4 Whart. 664; Webster's Dic. *Public*.   That the public is incidentally benefited, is immaterial.   There is no instance in which the franchises of a corporation are granted for any purposes, but where there is at least supposed to be some incidental benefit to the public from their exercise.   The word is used repeatedly in Acts of Assembly, and this distinction always preserved: Act 29th March, 1832; 14th April, 1835; 16th June, 1836; 4th and 27th May, 1841; Robinson *v.* Robinson, Law J. Rep. 73.

*March* 4.   Gibson, C. J.—The question before us is one of intention, and depends not on a rule of law, but on the interpretation of a will.   The testator bequeathed to his executors, sums of money in trust, respectively, for some of his children, "to be invested in any loans of the United States, or State of Pennsylvania, or of the city of Philadelphia, or of any of the incorporated districts in the county of Philadelphia, or in any of the *public stocks or securities* bearing an interest;" and the question is, whether the bonds of the Lehigh Coal and Navigation Company were public securities within the meaning of the clause.   The words must be understood in their popular sense.   The company, though technically a private one, was incorporated not merely for purposes of private gain, but for a great public object.   It was to bring into profitable use vast

mineral stores in a particular quarter of the State; to supply its emporium with a cheap fuel; and to give activity, not only to its commerce, but to its manufactures. The company had become a rich and powerful corporation; its bonds were a subject of investment in the stock market; and they were quoted in the published proceedings of the board of brokers, day by day, and side by side with the loans of the United States, and of Pennsylvania, much oftener than were the loans of the city or incorporated districts. In public estimation they were public securities; and it is not hard to believe that the testator viewed them as such. But it is argued that as the Lehigh Company was not strictly a public corporation, its bonds were not strictly public securities. Is a trustee who acts by the best lights he can procure, to be held to technical nicety of discrimination? The Bank of the United States, though a fiscal agent, was not a public corporation; and its shares of stock, though a medium of remittance between Europe and America, were not public securities; yet it will scarce be thought that an investment in them, during its most high and palmy state, would not have been within the power given in this instance. The city and districts, though municipal, are not strictly public corporations, because they are local, and embrace only a part of the people of the State, just as the Lehigh Company does; and if the testator dispensed with the public quality of the securities as to the one, why may he not be thought to have done so as to the other? There are only two kinds of public securities here with which the testator can be presumed to have been familiar; the loans of the United States and the loans of Pennsylvania, and it is not to be presumed that he meant to have any part of his money invested abroad. He authorized it to be invested in the federal and state loans, and the loans of the city and districts, by name, and if he intended to exclude other securities not purely public, his general direction was redundant and ridiculous; for there were none else to be had. They might have been had in Europe or our sister states, and whether European or American, they would have been equally within the letter, and perhaps the spirit of the power; but as a Chancellor would not authorize trust money to be invested in a country to which his jurisdiction would not extend, we ought to imitate his example. It seems the better opinion, therefore, that this investment was authorized by the will.

Decree reversed, and accountants discharged.